UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ASHTYN WILLIAMS, as the Personal Administrator of the ESTATE OF MALCOLM WILLIAMS,<br><br>    Plaintiff,<br><br>  v.<br><br>CLAY BOLEY, and AS-YET UNIDENTIFIED OFFICERS from the INDIANA STATE POLICE,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Cause No. 4:21-cv-68-RLM-KMB<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

OPINION AND ORDER

During an April 2020 early morning traffic stop between Louisville, Kentucky and Jeffersonville, Indiana, Indiana State Trooper Clay Boley shot and killed Malcolm Williams, who had been a passenger in his girlfriend's car. Plaintiff Ashtyn Williams, the personal administrator of Mr. Williams's estate, brings claims under 42 U.S.C. § 1983 claims Indiana law against Trooper Clay Boley and unidentified officers from the Indiana State Police. The defendants seek summary judgment on all claims. The court agrees that the state law claims and the unidentified defendant counts can't proceed to trial, but many genuine issues of material fact make summary judgment impossible on the § 1983 excessive force claim. A jury is needed to decide what happened.

1

STANDARD OF REVIEW

Because the standard for summary judgment prevents the defendants' motion from success, so the court begins there. "Summary judgment . . . is proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the movant] is entitled to judgment as a matter of law." Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011); Fed. R. Civ. P. 56(a). The court's function at the summary judgment stage isn't "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must construe the evidence, and all inferences that can reasonably be drawn from the evidence, in the light most favorable to the non-moving party. Id. at 249, 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ."). The movant bears the burden of showing that there is no genuine issue of material fact, but the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. A fact is material if affects the outcome of the case. Monroe v. Indiana Dep't of Transportation, 871 F.3d 495, 503 (7th Cir. 2017). "A factual dispute is genuine only if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Alston v. City of Madison, 853 F.3d 901, 910–911 (7th Cir. 2017) (quoting Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012)).

To defeat a summary judgment motion, "the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial[,]" Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); see also Fed. R. Civ. P. 56(e)(2).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." Nelson v. Napolitano, 657 F.3d 586, 590 (7th Cir. 2011). "Summary judgment cannot be used to resolve swearing contests between litigants," especially where the parties "present two vastly different stories." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003).

Conscious of the limited scope of the summary judgment inquiry,[1] the court turns to the uncontested facts.

---

[1] The defendants' summary judgment brief contains several asserted facts that don't help a court addressing a summary judgment motion because they seem to be addressed to inferences that might be drawn in the movants' favor about Mr. Williams's character. The brief speaks of Mr. Williams as a man with a criminal history and disregard for the law (Doc. No. 57, at 1), his being in jail for most of his romantic relationship with eyewitness Antoinette Webb. (Id. at 2), that Mr. Williams "was known to carry a gun with him all the time," (Id.), that his mother told him to do what he needed to for legal firearm possession and Mr. Williams was known to show off his gun on social media (Id. at 3), that Mr. Williams regularly drove without a valid operator's license, (Id. at 8, n.8), and that Mr. Williams falsely used his brother's name on other occasions. There is no evidence that Trooper Boley had any accurate information at all

3

FACTS

It is very early in the morning of April 28, 2020. Indiana State Trooper Clay Boley is conducting a routine patrol when he sees a vehicle traveling with a taillight out. Antoinette Webb, the car's driver, is in the late stages of pregnancy and is having contractions five minutes apart. Her passenger is Malcolm Williams, Ms. Webb's romantic partner and the baby's father. Trooper Boley turns to pursue the car and pulls it over on the right side of the road. Trooper Boley approaches the vehicle on the driver's side. The patrol car's lights illuminate the inside of the car. Trooper Boley asks for the driver's license and registration and tells Ms. Webb why he stopped her. Mr. Williams is reclined in the passenger seat with his hands behind his head.

Ms. Webb tells Trooper Boley that she didn't have her license, but relates her driver's license information. Trooper Boley asks for Mr. Williams's information, too, and Mr. Williams gives his brother's name and information. Trooper Boley goes back to his patrol car to verify the information. He learns that Mr. Williams has given him misinformation.

Trooper Boley goes back to the car's passenger's side to talk to Mr. Williams, who remains adamant that the information was correct. Ms. Webb is having contractions and moaning in pain. Trooper Boley goes back to the patrol car to call for an ambulance to come assist Ms. Webb.

---

about Mr. Williams when he fired the fatal shots and so the court doesn't consider this information in deciding summary judgment.

Trooper Boley goes back to the car, tells Ms. Webb and Mr. Williams that an ambulance is on the way. Upon Trooper Boley's request, Mr. Williams agrees to be checked for weapons and he finds a 9mm magazine in Mr. Williams's back pocket (the parties dispute whether Mr. Williams disclosed it, or Trooper Boley found it). Mr. Williams apologizes and says he forgot it was there. Trooper Boley asks where the gun is; Mr. Williams says it's at home. Trooper Boley asks Mr. Williams to sit back in the passenger seat and shut the passenger car door with the window still open so he can comfort Ms. Webb.

All the story so far is largely undisputed. From this point forward, there is little agreement in what Trooper Boley and Ms. Webb report.

This is how Trooper Boley remembers it: Mr. Williams turns towards Trooper Boley and stares at him, says something to Trooper Boley, reaches into the glove compartment, and pulls out a pistol with an extended magazine. Trooper Boley tells Mr. Williams to "stop." Mr. Williams begins to retract his hand from Trooper Boley, with the gun pointed towards the window. Trooper Boley grabs the gun as it reaches the car window to secure it in a "catcher's grip." Mr. Williams and Trooper Boley both have their hands on the gun as the gun is pushed out the car window. Trooper Boley sees a flash from the end of the barrel and feels the gun cycle. As Trooper Boley continues to try to gain leverage to get the gun out of Mr. Williams's possession, he feels the gun fire again. At that point, Trooper Boley reaches for his own pistol and fires six rounds into Mr. Williams's torso. Ms. Webb jumps from the car after hearing the gunshots. Trooper Boley is treated at a hospital for minor scrapes after the incident.

5

Ms. Webb remembers things this way: Mr. Williams takes the gun from the glove compartment and says, "Officer, Officer . . . here, here." Mr. Williams dangles the gun from the magazine to give it to Trooper Boley. The gun is pointed downward, and not at Trooper Boley. Ms. Webb doesn't see the gun once it gets out of the window, but she hears six gunshots right after Mr. Williams said "here, here" (a neighbor also hears four to five gunshots). Ms. Webb doesn't see Trooper Boley grab Mr. Williams's hands.

Crime scene investigators collect three shell casings from the vehicle that are identified as being shot from Mr. Williams's 9mm gun. The crime scene investigators can't determine the time or location that the shells were fired.

Mr. Williams died the next morning as a result of his gunshot wounds, and now his half-sister, Ashtyn Williams, brings this suit. The court has jurisdiction under 28 U.S.C. § 1343(a).

## THE FEDERAL CLAIMS

Ms. Williams brought a § 1983 excessive force claim against Trooper Boley, and also brought a claim for failure to intervene against "As-yet Unidentified Officers from the Indiana State Police." The defendants assert that summary judgment is proper because Ms. Williams hasn't identified any other officers she seeks to hold liable. Ms. Williams concedes that when she filed her complaint, she knew that other officers responded to the scene near the time of the shooting, and those officers might have been involved. But after discovery, Ms. Williams "was not able to identify any other officers who was culpable for Malcolm's

6

death." [Doc. No. 58 at 11, n. 1]. Because Ms. Williams can't identify specific officers and provide evidence so that a reasonable jury could find that she could prevail, the court grants summary judgment on any claims against any unidentified officers.

The court declines to grant summary judgment on Ms. Williams's excessive force claim. The record doesn't demonstrate whether Mr. Williams posed an imminent threat of serious physical harm to Trooper Boley when Trooper Boley shot Mr. Williams. The court can't clear up that question of fact on summary judgment.

Ms. Williams's excessive force claim against Trooper Boley arises under 42 U.S.C. § 1983. She asserts that Trooper Boley, acting under color of law, used excessive force in making a traffic stop. The Fourth Amendment establishes the framework for excessive force claims. Graham v. Connor, 490 U.S. 386 (1989). Under the Fourth Amendment, police officers may, in appropriate circumstances, use force up to and including deadly force. Weinmann v. McClone, 787 F.3d 444, 448 (7th Cir. 2015). Whether an officer used excessive force is governed by a reasonableness standard and requires that the "objective reasonableness of the of a particular seizure under the Fourth Amendment 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" Plumhoff v. Rickard, 572 U.S. 765, 774 (2014) (*citing* Graham v. Connor, 490 U.S. at 396).

Determining what a reasonable officer would have done requires analysis of the totality of the circumstances including "the information known to the officer at the time of the encounter; the duration of the encounter; the level of duress involved; and the need to make split-second decisions under intense, dangerous, uncertain, and rapidly changing circumstances." Siler v. City of Kenosha, 957 F.3d 751, 759 (7th Cir. 2020). A court doesn't analyze the claim with the benefit of hindsight, but rather evaluates the officer's actions given the exact scenario and information the officer had at the time. Id.

"The obligation to consider the totality of the circumstances in these cases often makes resort to summary judgment inappropriate." Siler v. City of Kenosha, 957 F.3d at 759. This is especially true in deadly force cases where "the witness most likely to contradict the officer's testimony—the victim—cannot testify." Cyrus v. Town of Mukwonago, 624 F.3d 856, 862 (7th Cir. 2010). Deadly force may be used when an officer has probable cause to believe that an armed suspect "poses a threat of serious physical harm, either to the officer or to others," or "committed a crime involving the infliction or threatened infliction of serious physical harm … if necessary to prevent escape." Tennessee v. Garner, 471 U.S. 1, 11 (1985); *see also* Siler v. City of Kenosha, 957 F.3d 751, 759 (7th Cir. 2020); Sanzone v. Gray, 884 F.3d 736, 740 (7th Cir. 2018).

This case differs from most cases involving fatal traffic stops in that while Mr. Williams is no longer here to testify, another witness, Ms. Webb, was sitting in the driver's seat during the events and provides testimony of what happened.

8

Relying on his own memory of the events, Trooper Boley argues that summary judgment is appropriate because, under the circumstances, a reasonable officer would determine that someone actively shooting at him was an immediate threat that warranted deadly force. Trooper Boley doesn't contend that the fatal force was used to prevent escape. Ms. Williams argues against summary judgment because there is contradicting evidence that Mr. Williams didn't shoot at Trooper Boley at all but was instead trying to surrender his firearm. Multiple plausible versions of events based on the evidence causes a question of fact that could result in a reasonable jury returning a verdict for Ms. Williams.

A jury listening to the evidence in the summary judgment record could, if persuaded to draw reasonable inferences in Trooper Boley's favor, find that Trooper Boley saw Mr. Williams – who had already lied about his identity and possessed a magazine – stare at Trooper Boley, reach into the glove compartment, and grab a pistol with an extended magazine, say something Trooper Boley can't remember, and point the gun towards Trooper Boley. Such a jury could find that Trooper Boley told Mr. Williams to "stop," grabbed the gun and placed in a "catcher's grip" to gain control of the weapon as it came through the car window. Such a jury could find that as the men struggled, the gun discharged twice, that Trooper Boley believed Mr. Williams was trying to shoot him, that Trooper Boley drew his own gun with the hand not occupied with the struggle over Mr. Williams's gun, and that Trooper Boley shot six rounds

9

targeting Mr. Williams's torso. Police recovered three shell casings in the vehicle that were fired from Mr. Williams's firearm.

But that isn't the stuff of which summary judgment is made; at this stage the court decides not whether a jury could deliver a verdict for the party seeking summary judgment, but whether a jury could decide the case for the other side. And a jury hearing this evidence and drawing reasonable inferences in the plaintiff's favor could return a verdict for the plaintiff. Such a jury could conclude that Trooper Boley fired fatal shots as Mr. Williams tried to give his gun to Trooper Boley and that Mr. Williams didn't point or fire his gun at Trooper Boley. Such a jury could believe Ms. Webb's testimony that she saw Mr. Williams reach into the glove compartment and say "Officer, officer . . . here, here" [Doc. No. 56-4 at 151:1-25] while dangling the firearm by the magazine and without pointing it at Trooper Boley, and that she heard six gunshots as Mr. Williams's hand broke the plane of the car window. A neighbor also testified that he heard four to five shots. This is contrary to the eight cumulative shots Trooper Boley testified occurred, and consistent with an inference that Trooper Boley was the only person to fire a weapon during the incident. A reasonable jury could credit Ms. Webb's testimony that she didn't see Trooper Boley grab Mr. Williams hands before she heard the six shots. A reasonable jury could conclude that the three shell casings found in the vehicle weren't from the incident. Crime scene investigators verified that the shells were from Mr. Williams's gun, but couldn't tell that the weapon was fired on a particular day or time.

There are genuine disputes of material fact as to what Mr. Williams did and said before reaching into the glove compartment, the way Mr. Williams was held the firearm, and whether Mr. Williams fired his weapon at Trooper Boley. These factual disputes are material to whether Trooper Boley was in danger of serious bodily harm at the time he fatally shot Mr. Williams. Resolution of those disputes is for a jury, not a court deciding a summary judgment motion. The court denies summary judgment on Ms. Williams's excessive force claim.

## THE STATE LAW CLAIMS

Ms. Williams asserts claims against Trooper Boley in his individual capacity under Indiana law for assault, battery, wrongful death, intentional of emotional distress, a survival action under Ind. Code § 34-9-3-4, and respondeat superior and indemnification.

Trooper Boley is entitled to summary judgment on Ms. Williams's indemnification and respondeat superior claims. In her response, Ms. Williams concedes that Trooper Boley is correct that the indemnity and respondeat superior claims are more properly made against Trooper Boley's employer after judgment. Trooper Boley's employer, the Indiana State Police, isn't a defendant in this case. Claims for respondeat superior and indemnification can't survive without an employer party to take responsibility for or indemnify Trooper Boley's acts. *See* City of Fort Wayne v. Moore, 706 N.E.2d 604, 607 (Ind. Ct. App. 1999); Ind. Code § 34-13-4-1. The court grants summary judgment on indemnification and respondeat superior claims.

The Indiana Tort Claims Act governs state law tort claims against governmental entities and public employees, including intentional infliction of emotion distress and wrongful death claims against a government employee. Wynn v. City of Indianapolis, 496 F. Supp. 3d 1224, 1234 (S.D. Ind. 2020); *see also* Ind. Code § 34-13-3-1 et. seq. The Indiana Tort Claims Act provides that a "governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from ... [t]he adoption and enforcement of or failure to adopt or enforce ... a law ... unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8)(A). This provision immunizes a police officer's conduct when: (1) the officer was acting within the scope of his employment when the injury to plaintiff occurred; and (2) whether the officer was engaged in the enforcement of a law at that time. Snyder v. Smith, 7 F. Supp. 3d 842, 874 (S.D. Ind. 2014) (*citing* Harness v. Schmitt, 924 N.E.2d 162, 165 (Ind. Ct. App. 2010).

Ms. Williams agrees that she can't maintain her state-law claims for intentional infliction of emotional distress and wrongful death. Ms. Williams's complaint alleges multiple times that Trooper Boley (and the as-yet unidentified officers) were "acting under the color of state law and within the scope of their employment." [Doc. No. 1, ¶¶10, 57,61]. Ms. Williams agrees that that allegation precludes recovery under the Indiana Tort Claims Act, Ind. Code § 34-13-3-5(b); Ball v. City of Indianapolis, 760 F.3d 636, 645 (7th Cir. 2014), and the court grants summary judgment on the intentional infliction of emotional distress and wrongful death claims.

12

Ms. Williams does not, however, concede that summary judgment is appropriate on her remaining state law claims of assault, battery, and survival action under Ind. Code § 34-9-3-4. She brings these claims against Trooper Boley in his individual capacity.

Trooper Boley generally argues that the Indiana Torts Claim Act grants him immunity against all of the state law claims. Most of Trooper Boley's briefs for summary judgment on the state law claims assumed that the court would grant summary judgment on the § 1983 excessive force claim, undercutting Ms. Williams's allegations of assault and battery. Perhaps as a result, Ms. Williams doesn't address Trooper Boley's immunity argument as it pertains to the assault, battery, and survival claims, instead taking head on the merits arguments on the assault, battery, and survival action state law claims.

When a suit alleges wrongdoing by a government employee for acts he committed within the scope of his employment, Indiana's Tort Claims Act bars the plaintiff from seeking relief personally against the employee. Ind. Code § 34-13-3-5(b); *see also* Bowens v. City of Indianapolis, No. 1:13-CV-00072-DML, 2014 WL 4680662, at *5 (S.D. Ind. Sept. 19, 2014). That means that "a plaintiff cannot sue a governmental employee personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of his employment." Singh v. Indiana State Police, No. 1:08-CV-328-SEB, 2009 WL 1579527, at *7 (S.D. Ind. June 2, 2009) (*citing* City of Gary v. Conat, 810 N.E.2d 1112, 1118 (Ind. Ct. App. 2004)). Ms. Williams alleges in her complaint that Trooper Boley was acting within the scope of his employment [Doc. No. 1,

¶¶10, 57,61] and doesn't bring her state law claims against Trooper Boley's employer – the Indiana State Police. Ms. Williams is limited to seeking relief against the government employer based on its derivative liability. Carver v. Crawford, 564 N.E.2d 330, 334 (Ind. Ct. App. 1990). Because Trooper Boley was acting within the scope of employment, he is granted immunity under Indiana law from Ms. Williams state law claims. The court grants summary judgment on each of the state law claims against Trooper Boley.

CONCLUSION

The court DENIES the defendants' summary judgment motion [Doc. No. 55] on Ms. Williams's excessive force claim under 42 U.S.C. § 1983. The court GRANTS the motion on all other claims.

SO ORDERED.

ENTERED:  January 12, 2023

/s/ Robert L. Miller, Jr.
Judge
United States District Court

Distribution:
All counsel of record