# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

ASHTYN WILLIAMS[1] as the Personal )
Administrator of the ESTATE OF MALCOLM )
WILLIAMS, )
           )
           Plaintiff, )
           )
           v. )     Case No. 4:21-cv-00068-TWP-KMB
           )
CLAY BOLEY, )
           )
           Defendant. )

## ORDER ON THE PARTIES' MOTIONS *IN LIMINE*
## AND MOTIONS TO EXCLUDE EXPERT TESTIMONY

This matter is before the Court on Plaintiff Ashtyn Williams' ("Ms. Williams" or "Plaintiff"), as the personal administrator for the Estate of Malcolm Williams ("Mr. Williams"), Motions *in Limine*,[2] and Motions to Exclude Expert Testimony.[3] Also before the Court are Motions *in Limine* filed by Defendant Clay Boley ("Trooper Boley" or the "Defendant"),[4] and Defendant's Motion to Exclude Expert Testimony.[5] The jury trial is scheduled to begin on Monday, August 7, 2023. This case stems from a traffic stop that resulted in Trooper Boley shooting and killing Mr. Williams (Filing No. 1).

Both parties have moved for orders *in limine* precluding certain categories of evidence, testimony, and referencing certain factual issues at trial.[6] For the reasons set forth below, the Court

---

[1] "Plaintiff Ashtyn Williams is Malcolm Williams's sister and has been appointed as the Personal Administrator of Mr. Williams's estate by the Superior Court of Clark County, Indiana." Filing No. 1 at 2. Mr. Williams is survived by his parents, three children, and his sister. *Id*.
[2] *See* Filing No. 88; Filing No. 90; Filing No. 91; Filing No. 92; Filing No. 93; Filing No. 94; Filing No. 95.
[3] *See* Filing No. 89; Filing No. 98.
[4] *See* Filing No. 97.
[5] *See* Filing No. 96.
[6] *See* Filing No. 99; Filing No. 100; Filing No. 101; Filing No. 102; Filing No. 103; Filing No. 104; Filing No. 105; Filing No. 107; Filing No. 108; Filing No. 109; Filing No. 112; Filing No. 114.

**grants in part and denies in part** the Plaintiff's Motions *in Limine*; **denies** the Plaintiff's Motion to Exclude Expert Testimony; **grants in part and denies in part** Defendant's Motions *in Limine*; and **grants in part and denies in part** Defendant's Motion to Exclude Expert Testimony.

## I.    FACTUAL BACKGROUND

In the evening of April 29, 2020, Trooper Boley pulled over a vehicle for having a broken taillight in which Mr. Williams was the passenger and his nine-months pregnant girlfriend Antoinette Webb ("Ms. Webb") was driving. ([Filing No. 1 at 3](#).) Ms. Webb was asked to provide her license and registration; she informed Trooper Boley that she did not have her license, but she "relate[d] her driver's license information." ([Filing No. 72 at 4](#).) "Trooper Boley ask[ed] for Mr. Williams's information, too, and Mr. Williams [gave] his brother's name and information. Trooper Boley [went] back to his patrol car to verify the information. He learn[ed] that Mr. Williams ha[d] given him misinformation." *Id*. Ms. Webb began having labor contractions so Trooper Boley calls for an ambulance to come to the scene to assist her. Soon after and upon Trooper Boley's request,

> Mr. Williams agrees to be checked for weapons and he [Trooper Boley] finds a 9mm magazine in Mr. Williams's back pocket (the parties dispute whether Mr. Williams disclosed it, or Trooper Boley found it). Mr. Williams apologizes and says he forgot it was there. Trooper Boley asks where the gun is; Mr. Williams says it's at home. Trooper Boley asks Mr. Williams to sit back in the passenger seat and shut the passenger car door with the window still open so he can comfort Ms. Webb.

([Filing No. 72 at 5](#).)

Ms. Webb recalls Mr. Williams taking the gun from the glove compartment and saying, "Officer, officer… here, here, here" and Mr. Williams dangles the firearm from the magazine, so as to give it to Trooper Boley. According to Plaintiff, as Mr. Williams "attempted to hand the handgun to the police officer, by holding it in a way that clearly demonstrated that he could not

shoot the handgun, Defendant Boley fatally shot him at least six times. Most of those shots hit [Mr. Williams] in the back." (Filing No. 1 at 4.) Mr. Williams died at the scene. *Id*.

Trooper Boley recalls the events differently. He contends that Mr. Williams fired a handgun at him, and that he used appropriate force against Mr. Williams. According to Trooper Boley's narrative,

> Mr. Williams turn[ed] towards Trooper Boley and stares at him, says something to Trooper Boley, reaches into the glove compartment, and pulls out a pistol with an extended magazine. Trooper Boley tells Mr. Williams to "stop." Mr. Williams begins to retract his hand from Trooper Boley, with the gun pointed towards the window. Trooper Boley grabs the gun as it reaches the car window to secure it in a "catcher's grip." Mr. Williams and Trooper Boley both have their hands on the gun as the gun is pushed out the car window. Trooper Boley sees a flash from the end of the barrel and feels the gun cycle. As Trooper Boley continues to try to gain leverage to get the gun out of Mr. Williams's possession, he feels the gun fire again. At that point, Trooper Boley reaches for his own pistol and fires six rounds into Mr. Williams's torso. Ms. Webb jumps from the car after hearing the gunshots. Trooper Boley is treated at a hospital for minor scrapes after the incident.

(Filing No. 72 at 5.)

According to crime scene investigators, three shell casings from the vehicle were collected and identified as being shot from Mr. Williams' 9mm gun. *Id*. at 6. On April 29, 2021, Ms. Williams sued Trooper Boley and an unidentified officer asserting an excessive force claim, a failure to intervene claim and numerous state law claims (Filing No. 1.)[7] Following summary judgment rulings, the sole claim proceeding to trial is Count I—use of excessive force pursuant to 42 U.S.C. § 1983.

---

[7] Ms. Williams initially asserted the following claims against Trooper Boley and an unidentified officer: Count I—use of excessive force pursuant to 42 U.S.C. § 1983; Count II—failure to intervene pursuant to 42 U.S.C. § 1983; Count III—assault and battery; Count IV—wrongful death; V—survival action; Count VI—intentional infliction of emotional distress; Count VII—*respondeat superior*; and VIII—indemnification. *Id*. 5-10. All of Ms. Williams' claims were dismissed except the excessive force claim pursuant to § 1983 (Filing No. 72).

## II.    LEGAL STANDARD

### A.    Motions *in Limine*

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). Judges have broad discretion when ruling on motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Evidence may be excluded on a motion *in limine* only when the evidence is inadmissible on all potential grounds. *Townsend v. Benya*, 287 F.Supp.2d 868, 872 (N.D. Ill. 2003). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). Thus, the party moving to exclude evidence *in limine* has the burden of establishing that the evidence is not admissible for any purpose. *Robenhorst v. Dematic Corp.*, 2008 WL 1821519, at *3 (N.D. Ill. April 22, 2008). A ruling on a motion *in limine* is not necessarily final. *Townsend*, 287 F.Supp.2d at 872. "The ruling is subject to change when the case unfolds," particularly if the actual testimony differs from what was proffered. *Luce*, 469 U.S. at 41. "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Id*. at 41–42.

### B.    Federal Rules of Evidence 401 , 402, and 403

Pursuant to Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401; *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012). A party faces a significant obstacle in arguing that evidence should be barred

because it is not relevant, given that the Supreme Court has stated that there is a "low threshold" for establishing that evidence is relevant. *Boros*, 668 F.3d at 908 (citing *Tennard v. Dretke*, 542 U.S. 274, 285 (2004)). "Rule 402 provides the corollary that, with certain exceptions, '[r]elevant evidence is admissible' and '[i]rrelevant evidence is not admissible.'" *Boros*, 668 F.3d at 907. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Civ. P. 403; *Boros*, 668 F.3d at 909.

## C.      Admissibility of Expert Testimony

Rule 26 is designed to prevent prejudicial surprise and grant opposing parties an opportunity to assess expert witnesses' methodology and opinions through timely written disclosures. *Gicla v. United States*, 572 F.3d 407, 411 (7th Cir. 2009). The admissibility of expert opinions is governed by Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* Kirk v. Clark Equip. Co., 991 F.3d 865, 871 (7th Cir. 2021). Under Rule 702, the court acts as gatekeeper to ensure that proffered expert testimony is both relevant and reliable. *Id*. at 872 (quoting *Daubert*, 509 U.S. at 589). "In performing this role, the district court must engage in a three-step analysis, evaluating: '(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony.'" *Id*. (quoting *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)).

## III.      DISCUSSION

The parties petitioned the Court to exclude several categories of evidence from trial that they argue is inadmissible. The Court will address the parties' arguments in turn.

A.    **Plaintiff's Motion** *in Limine* **No. 1—Bad Act Evidence (Filing No. 88)**

Ms. Williams moves the Court to exclude Trooper Boley "from generally introducing evidence of after-acquired facts or speculation unknown to Trooper Boley at the time he used deadly force against Mr. Williams, and from specifically referencing evidence of Mr. Williams' alleged prior "bad" acts.  (Filing No. 88 at 1.)  Ms. Williams,

> concedes that Defendant Boley should be allowed to present the information Boley received prior to shooting [Mr. Williams], and whatever he observed at the scene. But events unknown to Defendant Boley that were learned during any post-shooting investigation must be excluded. To be specific, by this motion, Plaintiff seeks to bar claims about alleged prior bad acts of Mr. Williams, which may include but not limited to his prior arrests, convictions, (alleged) instances of domestic violence, other times Mr. Williams had with a handgun (including on video), any allegation [] that Malcolm used drugs, any social media post by Malcolm, and/or any issue about Malcolm's car.

(Filing No. 88 at 3.)

The Court agrees that any information learned by Trooper Boley prior to or during the incident may be used at trial as it is relevant to determine whether his level of force was appropriate.  Trooper Boley agrees not to inquire into specifics of Mr. Williams' arrests or specific convictions, prior allegations of domestic violence by Mr. Williams, or his alleged prior bad acts including prior arrests or drug use (Filing No. 105).  However, Trooper Boley seeks to elicit testimony from Ms. Webb and other family members "in general terms that Malcolm Williams was a convicted felon, had been previously arrested, and had been previously incarcerated." *Id.* at 2.  *See* Fed. R. Evid. 404(b)(2).  He argues that Mr. Williams' prior arrests, incarcerations and convicted felon status are relevant to show motive, intent, or absence of mistake.  Specifically, Trooper Boley contends this evidence is relevant for a jury to understand and reasonably infer that because Mr. Williams was a convicted felon in possession of a firearm, in an attempt to evade an arrest, he decided to point his gun and start shooting at Trooper Boley.

The Court agrees with Defendant that evidence of Mr. Williams' convicted felon status is relevant and admissible. However, specific prior arrests and incarcerations are inadmissible and not relevant. The Court recognizes that Mr. Williams' convicted felon status infers prior arrests and possible incarcerations. That said, the Court cannot determine pretrial that general evidence of prior arrest and incarceration is not admissible for any purpose and, as such, the Court defers this admissibility determination until trial so questions of foundation, relevancy, and prejudice may be resolved in the context of the trial—especially considering the potential for the introduction of additional evidence or the possibility for the parties to enter in stipulations.

Defendant opposes the motion *in limine* regarding Mr. Williams' unrelated police contacts and social media posts showing Mr. Williams holding a handgun and seeks to offer such evidence as possible impeachment evidence. The Court agrees that Plaintiff's request to bar evidence of "other times Mr. Williams had [] a handgun," or evidence of "any social media post by Malcolm, and/or any issue about Malcolm's car," is overly broad and vague. (Filing No. 88 at 3.) At the pre-trial stage, Ms. Williams has failed to show that such evidence is not admissible for any purpose, so an *in limine* blanket prohibition against such evidence is not appropriate. If such evidence is offered at trial, the Court will decide whether such evidence is admissible. Accordingly, the Court **grants in part and denies in part** Plaintiff's Motion *in Limine* No. 1 (Filing No. 88).

**B.      Plaintiff's Motion *in Limine* No. 2—Expert Testimony (Filing No. 89; Filing No. 98)**

Ms. Williams contends that the Court should bar Trooper Boley's experts, Howard J. Ryan, Jr. ("Mr. Ryan") and James P. Molinaro ("Mr. Molinaro"), from offering testimony at trial because they were improperly disclosed (Filing No. 89). Specifically, Ms. Williams claims that Trooper Boley "failed to produce a separate report for [his] two purported expert witnesses," but rather,

"provided one report with each's signature at the end." (Filing No. 89 at 2.)   Trooper Boley

responds that he fully complied with Rule 37,

> Contrary to Plaintiff's argument, Defendant's expert reports comply with Rule
> 26(a)(2)(B) as Defendant disclosed both Ryan and Molinaro as expert witnesses
> and provided a written report to Plaintiff. (*See* Ex. 1 at 5). There is no doubt that a
> report was signed by the witnesses disclosed under Rule 26(a)(2)(B). (*Id*. at 5-41).
> There is also no doubt that Defendant's expert witnesses were timely disclosures.
> (*See* Dkt. 35 and 43). There is no basis here to exclude Defendant's experts under
> Rule 37.

(Filing No. 99 at 1.)

"All witnesses who are to give expert testimony under the Federal Rules of Evidence must

be disclosed under Rule 26 (a)(2)(A)" while "only those witnesses 'retained or specially employed

to provide expert testimony' must submit an expert report complying with Rule 26(a)(2)(B)."

*Banister v. Burton*, 636 F.3d 828, 833 (7th Cir. 2011) (citing *Musser v. Gentiva Health Services*,

356 F.3d 751, 756-757 (7th Cir. 2004); Rule 26(a)(2)(C).  The expert report serves the purpose of

putting the opposing party on notice of the expert's proposed testimony so the opposing party may

form an appropriate response.  *Meyers v. National R.R. Passenger Corp.*, 619 F.3d 729, 734 (7th

Cir. 2010); *Musser*, 356 F.3d at 757–58. The consequence of non-compliance with Rule

26(a)(2)(B) is "exclusion of an expert's testimony ... 'unless the failure was substantially justified

or is harmless.'" *Meyers*, 619 F.3d at 734 (citing *Gicla v. United States*, 572 F.3d 407, 410 (7th

Cir .2009) (quoting Rule 37(c)(1))).

Trooper Boley's counsel informed counsel for Ms. Williams that the report was completed

by Mr. Ryan and Mr. Molinaro, which included their shared conclusions and bases for said

conclusions as evidenced by both their signatures on report.  Even if Mr. Ryan and Mr. Molinaro

failed to comply with Rule 26(a)(2)(B), the Court finds that exclusion is not warranted because the

purported noncompliance was harmless. Trooper Boley's counsel "made both Ryan and Molinaro

available to Plaintiff's attorneys to be deposed. Ms. Williams had the opportunity to depose both Ryan and Molinaro prior to trial and Plaintiff voluntarily chose not to depose either expert." (Filing No. 99 at 2 (emphasis omitted); Filing No. 99-3 at 1.)  Ms. Williams cannot now claim surprise. Ms. Williams should be adequately prepared to cross-examine both Mr. Ryan and Mr. Molinaro on all contents of the report. Trooper Boley should be prepared to address the cumulative nature of Mr. Ryan's and Mr. Molinaro's testimonies and whether one or both will be required to testify at trial. To the extent that Mr. Ryan or Mr. Molinaro cannot testify to the full contents of the report, the Court will exclude the report in its entirety and strike their testimonies from the record. Therefore, at this stage, the Court denies Plaintiff's Motion *in Limine* No. 2 (Filing No. 89).

**C.** **Plaintiff's Motion *in Limine* No. 3—Adverse Consequences (Filing No. 90)**

Ms. Williams asks the Court to bar Trooper Boley from arguing or insinuating that a "finding of liability against Boley will cause him to lose his job or to be charged criminally" because it irrelevant and, alternatively, is prejudicial (Filing No. 90 at 1).  This request is rightly unopposed.  While it is unclear whether finding Trooper Boley liable would result in an adverse employment action or lead to criminal consequences, this information is irrelevant to the question of whether Trooper Boley used excessive force. Even if this information was probative of the issues before the Court, said probative value would be significantly outweighed by the purported prejudice to the Plaintiff as such information could improperly influence the jury. As such, the Court grants Plaintiff's Motion *in Limine* No. 3 (Filing No. 90).

**D.** **Plaintiff's Motion *in Limine* No. 4—Trooper Boley's Good Deeds (Filing No. 91)**

The Plaintiff asks the Court, pursuant to Rule 404(a), to exclude any evidence and testimony about specific prior "good acts" done by the Defendant, including "Defendant Boley's commendations, awards, complimentary history, or job evaluations." (Filing No. 91.) The

Defendant does not object to excluding propensity evidence of "Defendant's prior 'good acts' as established through commendations and awards…." (Filing No. 100 at 1.) The Defendant, however, "reserves the right to introduce evidence for rehabilitation purposes following an attack by Plaintiff on Defendant's pertinent character trait." *Id*. Additionally, the Defendant "objects to Plaintiff's Motion in Limine No. 4 to the extent it seeks to bar any reference of Defendant's employment history with the Indiana State Police or military background." (Filing No. 100 at 2). Defendant argues that such evidence is admissible as background information. *Id*. *See Calhoun v. City of Chicago*, No. 09 C 2200, 2011 WL 13331674, at *3 (N.D. Ill. Aug. 15, 2011) (ruling that a witness's employment history was relevant and properly admissibly as background information under the Federal Rules of Evidence).

At the time of the incident, Trooper Boley was equipped with the knowledge and skills gained over the years from his service with the Indiana State Police ("ISP") and the military. That Trooper Boley graduated at the top of ISP's recruit class may be relevant concerning his skills and knowledge, so the Court will not exclude this evidence at the pretrial stage. As such, the Court defers this admissibility determination until trial so questions of foundation, relevancy, and prejudice may be resolved in the context of the trial.

Therefore, Plaintiff's Motion *in Limine* No. 4 is **granted** as it refers to prior "good acts" but it is **denied** as to Trooper Boley's background information.

### Plaintiff's Motion *in Limine* No. 5—Criminal Consequences (Filing No. 92)

Plaintiff asks the Court to bar any "arguments, mention, or reference to the fact that there was a criminal/internal investigation at all, that Defendant Boley was not criminally prosecuted for shooting Malcolm Williams, and that Defendant Boley was not disciplined for that fatal shooting." (Filing No. 92 at 4.) *See, e.g., McGown v. Arnold*, 2014 WL 5502612, at *6 (N.D. Ind.

2014).   Trooper Boley agrees with Plaintiff's request but contends that "[g]iven several of Plaintiff's filings indicate she seeks to introduce evidence that Trooper Boley's actions were not in compliance with policy, police practices, or otherwise not compliance [sic] with Indiana law, Plaintiff's motion in limine no. 5 should be denied." (Filing No. 104 at 2.) Trooper Boley goes on to state,

> For instance, in Plaintiff's Response to Defendant's Motion in Limine No. 18, Plaintiff demonstrates a clear desire to admit evidence of Defendant Boley's noncompliance with Indiana State Police Policy. Dkt. 101 at 10-11. Plaintiff states that "[t]he Court cannot, and need not, address the admissibility of potential policy noncompliance evidence related to Defendant" and "ruling on any potential objection to such evidence should be reserved until trial." *Id.* at 11. Another example of Plaintiff's attempts to introduce evidence to show that Trooper Boley's actions were somehow not within policy is found in Plaintiff's Response at Docket No. 103. If such evidence regarding policy is admitted into evidence by Plaintiff, Trooper Boley should be permitted to rebut such evidence with evidence that he complied with Indiana State Police Policy and was not criminally prosecuted or otherwise punished for his conduct in this matter.

*Id.* (Footnote omitted.)

The Court agrees with the parties. Whether Trooper Boley was not criminally investigated, prosecuted, or disciplined for shooting Mr. Williams does not absolve him of liability pursuant to § 1983.  This information is therefore irrelevant to this case and may confuse the jury.  As such, Plaintiff's Motion *in Limine* No. 5 (Filing No. 92) is **granted**. However, if Plaintiff argues or introduces evidence regarding Trooper Boley's lack of compliance with ISP's policies, trainings, or Indiana law, Trooper Boley will be allowed to rebut such evidence.  And that rebuttal evidence may include evidence of policy compliance, including that he was not disciplined for this incident.

**E.**   **Plaintiff's Motion *in Limine* No. 6—Inability to Pay Judgment (Filing No. 93)**

Plaintiff claims Trooper Boley should "be prohibited from arguing that he is unable to pay any judgements [sic] the jury may enter against him." (Filing No. 93 at 1.)  Plaintiff contends that,

Boley's personal finances have no impact in determining his constitutional liability, and compensatory damages are based on Plaintiff's loss of life, not how much Boley may or may not be able to pay. This evidence is further irrelevant when considering compensatory damages, because, per Indiana Code, the State is responsible for indemnifying any compensatory damage awards Plaintiff may receive against Defendant. *See* Indiana Code § 34-13-4-1 ("If a present or former public employee . . . is . . . subject to personal civil liability for a loss occurring because of a noncriminal act . . . within the scope of the public employee's employment which violate the civil rights laws of the United States, the [State of Indiana] shall . . . pay [] any judgement [sic] (other than for punitive damages) of the claim or suit . . .").
….

Regarding the issue of punitive damages, Plaintiff will concede that defendants who cannot pay a large award of punitive damages are generally allowed to make this point to the jury.

*Id*. at 1-2.

Trooper Boley has not responded to this request and, as such, it is waived.  Further, the Court sees no basis to permit this type of evidence as its probative value would be significantly outweighed by its prejudice to Plaintiff.  Therefore, the Court grants Plaintiff's Motion *in Limine* No. 6 ([Filing No. 93](#)).

## F.   <u>Plaintiff's Motion *in Limine* No. 7—Taxpayers' Pecuniary Interest ([Filing No. 94](#))</u>

Plaintiff next asks that the Court bar any arguments "appealing to jurors' pecuniary interests as taxpayers." ([Filing No. 94 at 1](#).)  Plaintiff claims that,

The State of Indiana, as employer of Defendant Boley, will indemnify any judgement [sic] entered against Boley in this suit, meaning that Indiana taxpayers would, collectively, be footing the bill. The Seventh Circuit, however, has long held that arguments that play into the jury pools pecuniary interests are unacceptable, in part because making such an appeal would necessarily disqualify a prospective juror from service. *See United States v. Scott,* 600 F.2d 1145, 1170 (7th Cir. 1981); *Moore ex rel. Estate of Grady v. Tujela*, 546 F. 3d 423, 429 (7th Cir. 2008) (declaring the following argument "of course" improper: "The city is not a random amorphous entity. It's you. We're talking about tax dollars here.").

([Filing No. 94 at 1](#).)

Trooper Boley has not responded to this request and, as such, it is waived.  Further, the Court does not see its relevance to this case and, more importantly, such evidence may improperly influence the jury to find Trooper Boley not liable. Therefore, the Court **grants** Plaintiff's Motion *in Limine* No. 7 ([Filing No. 93](#)).

G.    **Plaintiff's Motion *in Limine* No. 8—Out of Town Attorney ([Filing No. 95](#))**

Plaintiff asks the Court to bar defense counsel from "referring to Plaintiff's counsel as being from out-of-town".  ([Filing No. 95 at 1](#).)  Plaintiff claims that,

> Such an insinuation is obviously irrelevant, as it does not bear on any issues in front of the jury. Moreover, any such reference risks inappropriately appealing to jurors who would tend to favor local attorneys over out-of-town attorneys. Other courts in the Seventh Circuit have had no issues granting a similar order when sought. *See Ott v. City of Milwaukee*, No. 09-C-870, 2015 WL 1219587, at *3 (E.D. Wis. Mar. 17, 2015). *See also Avery v. City of Milwaukee*, No. 11-C-408, 2015 WL 247991, at *5 (E.D. Wis. Jan. 20, 2015).

([Filing No. 95 at 1](#).)

Trooper Boley rightly did not object to Plaintiff's Motion *in Limine* No. 8.  This information has no bearing on this case and arguably could cause the jury to view the Plaintiff's counsel in a negative light.  Finding sufficient basis, the Court **grants** Plaintiff's Motion *in Limine* No. 8 ([Filing No. 95](#)).

H.    **Defendant's Motion *in Limine* No. 9 to Exclude Susan Peters' Testimony ([Filing No. 96](#))**

Trooper Boley asks the Court to exclude Plaintiff's expert, Susan Peters, from offering testimony at trial because it includes (1) improper legal conclusions, and (2) opinions relating to "basic police procedures" that would mislead the jury, confuse the issues, or create unfair prejudice…." ([Filing No. 96 at 1](#).)

In addition to being properly qualified, an expert's testimony must "assist the jury and rely only on evidence on which a reasonable expert in the field would rely." *United States v. Lundy*,

13

809 F.2d 392, 395 (7th Cir. 1992).  "[E]xpert testimony as to legal conclusions that will determine

the outcome of the case is inadmissible."  *Good Shepherd Manor Foundation, Inc. v. City of*

*Momence*, 323 F.3d 557, 564 (7th Cir. 2003).  Importantly, as the proponent of the expert testimony

at issue, Plaintiff bears the burden to establish its admissibility.  *Lewis v. CITGO Petroleum Corp.*,

561 F.3d 698, 705 (7th Cir. 2009).  Susan Peters explains that she "was asked to review police

procedures and use of force policies" and  her opinions consider "the matter from the perspective

of Antoinette Webb's account of the events, and [she] offers opinions about whether deadly force

was necessary".(Filing No. 96-1 at 3).

Trooper Boley argues the Court should preclude Ms. Peters from offering the following

impermissible testimony,

> **Opinion 1**
> Based on the observations of Antoinette Webb during the shooting incident that
> occurred on April 29th, 2020, I opine that deadly force would have been excessive
> and unnecessary if Malcolm Williams alerted Trooper Boley that he was handing
> the weapon out of the window, by holding onto the magazine.
> ….
>
> **Opinion 2**
> It is my opinion, based upon my knowledge, education, police training, and law
> enforcement experience as an officer, that basic police procedures during the traffic
> stop on Ms. Webb and Malcolm Williams, fell way below the standard of police
> practices and officer safety.
> ….
>
> **Opinion 3**
> It is my opinion, based upon my knowledge, education, police training, and law
> enforcement experience as an officer that basic police procedures and training in
> conducting any shooting incident would have involved the collection of physical
> evidence to determine the facts of the incident. This physical evidence collection
> would involve a search for any alleged discharged bullets, swabbing for evidence
> of gunshot residue at the scene and on individuals involved, and the collection and
> ballistics testing of any firearms involved in the incident.

(Filing No. 96 at 2.; Filing No. 96-1 at 4-6).

Ms. Peters has "served 29 years in law enforcement" and "worked as a police practices expert/consultant since October of 2011." (Filing No. 96-1 at 2.)  During her career Ms. Peters has investigated "homicides, suspicious deaths, no-body homicides, cold cases, kidnappings, felony assaults, robberies, officer-involved shootings and officer-involved 'in-custody' deaths." *Id*. It is not disputed that Ms. Peters is an expert on the subject about which she seeks to testify. Plaintiff contends that Ms. Peters will offer the "uncontroversial opinion that it is a departure from established police standards to shoot and kill someone who is obviously surrendering a firearm." (Filing No. 103 at 2). Trooper Boley, however, contends that "Peters' opinions go beyond Rule 702 testimony as her opinions are riddled with legal conclusions and her statements about 'basic police procedures' do nothing to assist the jury here.  (Filing No. 96 at 2.)  The Court agrees in part.

Opinion 1 is impermissible legal conclusion.  The question of whether an officer's use of force was reasonable is a question of law "rather than a pure question of fact for the jury to decide." *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018). Ms. Peters will not be allowed to testify as to what Ms. Webb reported or observed.  Ms. Webb can testify about her own observations and the jury is more than capable of drawing its own conclusion from that testimony as to whether Mr. Williams was resisting arrest or whether Trooper Boley used unreasonable force.  Moreover, an expert opinion is not helpful--or needed--to establish that it is a departure from established standards to shoot and kill someone who is surrendering a firearm. Therefore, Ms. Peters may not opine on the observations of Ms. Webb or draw conclusions from such observations that clearly impact the ultimate issue before the trier of fact.

Opinion 2 is not relevant to the issue before the jury. Whether  Trooper  Boley's "police procedures during the traffic stop fell way below the standard of police practices and officer safety"

would not advance the inquiry into whether Trooper Boley violated Mr. William's Fourth Amendment rights by using excessive force during the traffic stop. In order to establish an excessive force claim under § 1983, plaintiffs must demonstrate that a state actor's use of force was "objectively unreasonable" under the circumstances. *See* DeLuna v. City of Rockford, Ill., 447 F.3d 1008 (7th Cir. 2006). The Seventh Circuit has consistently held that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." *See Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir.2003); *Pasiewicz v. Lake County Forest Preserve Dist.,* 270 F.3d 520, 526 (7th Cir.2001); *Soller v. Moore,* 84 F.3d 964, 969 (7th Cir.1996). Under the circumstances here, a violation of police policies regarding a traffic stop is immaterial as to the question of whether a violation of the federal constitution (i.e. excessive force) has been established. *See id.* Accordingly, Ms. Peters will not be allowed to opine on what is the accepted police procedure for a traffic stop and how Trooper Boley's conduct deviated from said procedures.

Opinion 3, that officers failed to follow basic police procedures and training in conducting the collection of physical evidence to determine the facts of the incident, is permissible expert testimony. Plaintiff contends that Ms. Peters expert policing opinions about the subsequent police investigation of Defendant Boley's fatal shooting of Mr. Williams is relevant to support Plaintiff's version of the events. Plaintiff argues

> In the end, there is the absence of physical evidence relevant to Boley's claim that Malcolm Williams fired a gun at him—there was no gunshot residue found on Malcolm Williams and no fired bullets were recovered at the scene. Dkt. 96-1, Peters Report, at 6. These facts and Ms. Peters' opinions illustrate why a reasonable jury can find for Plaintiff, contrary to Defendant Boley's claim that he will make at trial that the physical evidence supports his version of events.

(Filing No. 103 at 2.  Plaintiff asserts that Ms. Peters' opinions about the subsequent investigation after the shooting will further aid the jury because they explain the lack of physical evidence that would corroborate Ms. Peters version of events. The Court finds this testimony may be relevant and might assist the jury in determining whether or not Trooper Boley used excessive force, and this evidence will not confuse the jury.  Trooper Boley's assertion that Ms. Peters opinions are flawed can be explored in cross examination of the witness.[8] The Court finds the probative value of this evidence outweighs any undue prejudicial effect under Fed. R. Evid. 403.

Therefore, the Court **grants** in part and **denies** in part Plaintiff's Motion *in Limine* to Exclude Dr. Peters from testifying at trial (Filing No. 96).

I.     **Defendant Boley's Motions *in Limine* (Filing No. 97)**

1.     **Motion *in Limine* No. 1—Unrelated Complaints, Discipline, or Lawsuits**

Trooper Boley argues the Court should "bar any testimony, evidence, or reference to any unrelated complaints, discipline, suspensions, or other lawsuits against Defendant Trooper Boley in the context of his employment with the Indiana State Police." (Filing No. 97 at 1.) Plaintiff "does not presently intend to raise any such issues," but requests that "the motion should be denied without prejudice to being re-raised at trial should such conduct come up and Plaintiff will apprise the Court as to whether Plaintiff believes any such evidence should be admitted." (Filing No. 101 at 1.)  The Court agrees with the Plaintiff.  Further, this category of evidence is overbroad and vague, and Trooper Boley has not shown that, at this pre-trial stage, such evidence is not admissible

---

[8] For example, in his reply, Trooper Boley asserts that "Had Peters reviewed Tressler's deposition transcript prior to authoring her report, she would have seen that shell casings recovered were determined to have come from Malcom's weapon" and "Despite her report stating that she reviewed photos of Trooper Boley (though it was unclear with photos), Peters' report also ignores that there was a black discoloration consistent with gunshot residue…". (Filing 112 at 8).

for any other purpose.  Therefore, the Court **denies without prejudice** Defendant's Motion *in Limine* No. 1.

### 2.    <u>Motion *in Limine* No. 2—Dismissed Claim</u>

Trooper Boley argues the Court should "bar any testimony, evidence, or references to any previously dismissed claims." (Filing No. 97 at 2.)  "Plaintiff has no objection to the notion that claims not being tried should not be referred to at trial." (<u>Filing No. 101 at 4</u>.)  As discussed earlier, the Court dismissed all other claims against Trooper Boley except for Plaintiff's Fourth Amendment excessive force claim (<u>Filing No. 72</u>).  Accordingly, the Court **grants** Trooper Boley's Motion *in Limine* No. 2.

### 3.    <u>Motion *in Limine* No. 3—Settlement Negotiation</u>

Trooper Boley argues the Court should "bar any references, evidence or argument related to settlement discussions, the content of such discussions or whether such discussions took place are inadmissible and should be excluded."  (<u>Filing No. 97 at 2</u>.)  Plaintiff agrees that any reference to "settlement discussions does not constitute admissible evidence [and, as such,] asks that the Court grant the motion *in limine* to bar any evidence or reference to settlement discussions." (<u>Filing No. 101 at 4</u>.)  Accordingly, the Court **grants** Trooper Boley's Motion *in Limine* No. 3.

### 4.    <u>Motion *in Limine* Nos. 4 and 5—Indemnification and Financial Condition</u>

Trooper Boley argues the Court should "prohibit any and all references to the fact that the Defendant may be indemnified for any judgment in this action." (<u>Filing No. 97 at 4</u>.)  *See Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) ("When the defendant is to be fully indemnified, such evidence, far from being required, is inadmissible.").  Trooper Boley contends that, "[i]f offered by Plaintiff, this evidence could sway a jury to find against the individual Defendant simply because they are aware that any judgment will be paid by some entity other than the individual

18

Defendant himself." (Filing No. 97 at 4.)  Trooper Boley also asks the Court to "bar any evidence or reference to the financial status of the individual Defendant, as the financial condition of a defendant is irrelevant and is inadmissible absent evidence relating to the same being introduced by the Defendant."  *Id*.  Plaintiff "does not oppose Defendants' [sic] request to bar evidence of Indiana's indemnification of damage awards entered against Defendant Boley on federal constitutional claims (MIL No. 4) or Defendant's financial status (MIL No. 5), provided Defendant does not open the door to such evidence with testimony about his own inability to pay." (Filing No.101 at 4.)  To the extent that Trooper Boley does not open the door, the Court **grants** Motions *in Limine* Nos. 4 and 5.

  5. **Motion *in Limine* No. 6—Law Enforcement Agencies' Misconduct**

  Trooper Boley next asks the Court to "bar all parties from referring to other police or other law enforcement misconduct, criminal investigations, or publicized scandals not connected to the allegations in this case." (Filing No. 97 at 3-4.) *See Fox-Martin v. County of Cook*, 2010 WL 4136174, at *4 (N.D. Ill. Oct. 18, 2010) (barring all reference to police misconduct unrelated to the plaintiff's specific claims of excessive force).  Plaintiff agrees and joins Trooper Boley's Motion *in Limine* No. 6 "[t]o the extent that the … other law enforcement misconduct … are not connected to the allegations in this case." (Filing No. 101 at 5.)  The Court agrees with the stipulation at this pre-trial stage, **grants** Trooper Boley's Motion *in Limine* No. 6.

  6. **Motion *in Limine* No. 7—Whether the Use of Force was Excessive**

  Trooper Boley next asks the Court to "bar any and all testimony and lay witness opinions, including but not limited to those of Plaintiff, that any force used by Trooper Boley was 'excessive.'" (Filing No. 97 at 4.)  The Plaintiff responded that she "agrees that non-expert witnesses should be precluded from testifying as to whether Defendant Boley's use of force was

constitutionally excessive. Therefore, Plaintiff does not oppose this motion, with the understanding that all purported opinions about the reasonableness of Defendant Boley's use of force will be similarly excluded." (Filing No. 101 at 6.)  The Court agrees with the parties. The Court will not allow either lay witness or expert witness to testify about whether Trooper Boley's use of force was excessive.  Therefore, the Court **grants** Trooper Boley's Motion *in Limine* No. 7.

### 7.   Motion *in Limine* No. 8—Reference to "Code of Silence," or "Blue Wall"

Trooper Boley argues the Court should bar "Plaintiff [from] regarding any contention that there was a 'code of silence,' 'blue wall,' or the like describing situations in which police generally cover for their colleagues." (Filing No. 97 at 5.)  Plaintiff claims that "Defendant seeks to bar any mention of these concepts, even inferences supported by evidence, that police officers conspire, cover up, or lie for their colleagues, as well as evidence related to misconduct of non-defendants. This would, in effect, bar evidence that is unquestionably relevant to bias…." (Filing No. 101 at 6.)  The Court finds Trooper Boley's argument persuasive.  Here, such testimony is not only irrelevant but any probative value is outweighed by undue prejudice.  This is not an obstruction of justice case.  The jury must merely assess whether Trooper Boley used unreasonable force against Mr. Williams.  Attempting to prove anything beyond that may confuse the issue to be decided by the jury.  Any proof of bias as it relates to non-defendant officers would only serve to unduly prejudice Trooper Boley.  This evidence does not help the jury in deciding whether Trooper Boley used excessive force against Mr. Williams. As such, the Court **grants** Trooper Boley's Motion *in Limine* No. 8.

### 8.   Motions *in Limine* No. 9—Other Use of Force Incident by ISP Officers

Trooper Boley next contends that the Court should bar "any and all evidence, testimony, or argument regarding any other incidents involving the use of excessive force by the Indiana State

Police or its police officers."  ([Filing No. 97 at 5](#).)  Plaintiff responds that it "does not intend to adduce evidence of other specific allegations of excessive force committed by any Indiana State Police officers other than Defendant Boley, and to that extent does not oppose the motion." ([Filing No. 101 at 7](#).)  Accordingly, the Court **grants** Trooper Boley's Motion *in Limine* No. 9.

### 9.   Motions *in Limine* No. 10 and 11— *Monell* Evidence[9]

Trooper Boley next contends that the Court should bar "any and all testimony that the Indiana State Police failed to train, to monitor, to discipline … [or [] investigate] its officers.  Any such evidence remains irrelevant, as there is no direct municipal defendant, and no *Monell* claim to be tried." ([Filing No. 97 at 6](#).)  *See Gonzalez v. Olson*, 2015 WL 3671641, pp. 12, 17 (N.D. Ill. 2015) (granting motion *in limine*, as the "failure to properly train, monitor, discipline, and/or control its police officers generally is inadmissible…"); *Favila v. City of Chicago*, 2011 WL 2160882, pp. 3-4 (N.D. Ill. 2011) (barring *in limine* any evidence regarding the failure to discipline the individual defendants as well as evidence relating to "the nature and quality of the investigation").

Plaintiff argues that Trooper Boley's broad request "should be rejected at this stage. Evidence about the Indiana State Police's training or supervision of Defendant Boley may be admissible" for the "purpose of establishing opportunity, intent, knowledge, absence of mistake, or lack of accident." ([Filing No. 101 at 8](#).)  The Court agrees with Trooper Boley.  Ms. Williams has not alleged that ISP failed to train Trooper Boley.  Implicit in Plaintiff's excessive use force claim is an assertion that Trooper Boley failed to heed his training by using excessive force against

---

[9] A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. *See generally Monell v. Department of Social Services of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Mr. Williams that resulted in his death.  Considering that Ms. Williams has not alleged a *Monell* claim in this case, the Court finds that this information is irrelevant and may confuse the jury.  The Plaintiff is, however, allowed to offer testimony regarding Trooper Boley's failure to heed his training for "purpose of establishing opportunity, intent, knowledge, absence of mistake, or lack of accident."  *See* Fed. R. Evid. 404(b).  As such, the Court **grants in part and denies in part** Trooper Boley's Motion *in Limine* Nos. 10 and 11.

### 10.     Motion *in Limine* No. 12—"Golden Rule" Argument

Trooper Boley goes on to argue the Court should "bar all parties from referring to or referencing the so called 'Golden Rule.'  The so-called 'golden rule' appeal asks the jurors to place themselves in Plaintiff's shoes." (Filing No. 97 at 6.)  The "Plaintiff does not object to this request so long as any such bar applies equally to both parties." (Filing No. 101 at 8.)  *See Allen v. American Cyanamid Co.*, Nos. 11-CV-0055, 14-CV-14232021 WL 1092804, *9 (E.D. Wis. March 22, 2021).  Accordingly, the Court **grants** Trooper Boley's Motion *in Limine* No. 12.

### 11.     Motion *in Limine* No. 13—Attorneys' Fee

Trooper Boley contends that "[n]o party should be permitted to introduce any evidence to the jury about possible attorney fees or potential costs of legal expenses because attorney's fees and litigation costs are a matter to be assessed by the Court, not by a jury." (Filing No. 97 at 7.)  The "Plaintiff agrees with Defendant's Motion in Limine No. 13 that Plaintiff's adjudication for attorneys' fees rests with the Court and not the jury so that evidence or references regarding Plaintiff's attorney fee claim would not properly be made to the jury." (Filing No. 101 at 8.)  Accordingly, the Court **grants** Trooper Boley's Motion *in Limine* No. 13.

### 12.   <u>Motion *in Limine* No. 14—Lay Person Providing Rule 702 Testimony</u>

Trooper Boley next asks the Court to "bar Plaintiff or any lay witness from testifying as to any medical conditions, causation, diagnoses, or prognoses resulting from Defendant's actions or inactions as alleged by Plaintiff. Neither Plaintiff nor any lay witness is competent to offer testimony regarding any proposed medical condition, causation, or diagnosis." (<u>Filing No. 97 at 7</u>.)  Plaintiff contends that "only those witnesses who have expertise as defined under Federal Rule of Evidence 702 should be allowed to offer expert opinions to the jury and only so long as those witnesses were disclosed as witnesses to offer expert opinions under Federal Rule of Civil Procedure 26." (Filing No. 101 at 8-9.)  Considering that Plaintiff agrees with Trooper Boley's request and the Court has already determined the admissibility of the parties' expert testimony, the Court **grants** Trooper Boley's Motion *in Limine* No. 14.

### 13.   <u>Motion *in Limine* No. 15—Malcolm Williams' Autopsy Photographs</u>

Trooper Boley next contends that "[t]he Court should bar the introduction or admission of any autopsy photos or any other photos of Malcolm Williams taken once he was removed from the scene of the shooting." (<u>Filing No. 97 at 8-9</u>.) Trooper Boley claims such photographs are irrelevant to whether he used excessive force against Mr. Williams.  *Id*.  Plaintiff contends that "[b]ecause Malcolm will not be able to testify about his injuries, these photographs are the only evidence available to the jury to assess the injuries caused by Defendant Boley's fatal shooting. This highly relevant evidence should be presented to the jury." (<u>Filing No. 101 at 9</u>.)

It is undisputed that Trooper Boley shot Mr. Williams six times and, as a result, he died. The jury must determine whether Trooper Boley's conduct rose to the level of excessive force based upon what occurred at the scene of the incident. To the extent that Trooper Boley "offer[s]

evidence about gunshot wounds and bullet trajectories (which can only be seen from the autopsy photographs)" the Plaintiff will be allowed to introduce similar photographs.

The Court has not seen the proffered photographs, and thus is unable to  determine whether the autopsy photographs might inflame the jury and that their probative value would be outweighed by the prejudice to Trooper Boley. Accordingly, Motion *in Limine* No. 15 is **denied** at this time and the Court defers this admissibility determination until trial so questions of foundation, relevancy, and prejudice may be resolved in the context of the trial**.**

### 14.    Motion *in Limine* No. 16—Exclude Non-Party Witness from the Courtroom

Trooper Boley next asks the Court to "exclude any non-party witnesses from the courtroom during testimony.  Fed. R. Evid. 615." ([Filing No. 97 at 9](#).)  Trooper Boley next asks the Court to "exclude any non-party witnesses from the courtroom during testimony.  Fed. R. Evid. 615." ([Filing No. 97 at 9](#).)  Rule 615 calls for the sequestering or exclusion of non-party or designated witnesses during trial, so that they cannot hear other witnesses' testimony.  The Plaintiff joins in this request. *Limine* No. 16 is **granted**.

### 15.    Motion *in Limine* No. 17—Trooper Boley's Marijuana Use

Trooper Boley argues the Court should "bar Plaintiff from eliciting testimony of Trooper Boley's arrest in 2013 for possession of marijuana. This was when Trooper Boley was a minor. There were no charges filed and there was no conviction." ([Filing No. 97 at 9](#).)  The Plaintiff does not object to Defendant Boley's motion and "does not intend to introduce any such evidence; provided however[,] that Defendant Boley does not open the door to the introduction of this evidence." ([Filing No. 101 at 10](#).)  Whether Trooper Boley was arrested for marijuana use in 2013 is irrelevant to whether he used excessive force in 2020.  It is not alleged that Trooper Boley was addicted to marijuana or more importantly that he had smoked marijuana prior to the incident and,

as such, his judgment was somehow impaired by the drug, resulting in him using excessive force against Mr. Williams.  With respect to Plaintiff's contention that "Boley must not be permitted to introduce evidence of any prior arrests or convictions of Malcolm Williams, as stated in Plaintiff's motion in limine," *id.*, the Court has already addressed Plaintiff's request above. Trooper Boley may generally reference that Mr. Williams was a convicted felon, had been previously arrested, and had been previously incarcerated.  As such, the Court **grants** Trooper Boley's Motion *in Limine* No. 17.

16. **Motion *in Limine* No. 18—Failure to Comply with ISP's General Orders or Policies**

Lastly, Trooper Boley argues the Court "should bar any and all references to the violation of or failure of any of the defendant [sic] to comply with any general orders, policies, rules or regulations of the Indiana State Police Department as irrelevant to the issue of whether excessive force was used." (Filing No. 97 at 9-10.)  Plaintiff contends that,

> Such evidence may be directly relevant to Plaintiff's claims here, which is why the Seventh Circuit's pattern instructions contemplate the admission of this evidence. See 7TH CIR. PATTERN INST. NO. 7.04. If admitted, the mechanism for ensuring the jury understands the purpose of admitting the evidence is an instruction (which Plaintiff would be happy to provide).

(Filing No. 101 at 10 (footnote omitted).)

Plaintiff contends that "evidence that Defendant Boley violated police policies may be admissible to prove motive, intent, plan, or opportunity," and, in turn, assist the jury in determining an appropriate punitive award. Plaintiff concludes that "the court cannot and need not, address the admissibility of potential policy noncompliance evidence related to Defendant or other police officers here." The Court agrees, while generally evidence of police policy is excluded from evidence, there is no per se rule. *See*, *United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017).

The Court will reserve ruling on this motion until it is placed in context of the trial. As such, the Court **denies** Trooper Boley's Motion *in Limine* No. 18.

### IV.      CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** the Plaintiff's Motions *in Limine* as set forth above (Filing No. 88; Filing No. 90; Filing No. 91; Filing No. 92; Filing No. 93; Filing No. 94; Filing No. 95); **DENIES** Plaintiff's Motions *in Limine* to Exclude Expert Testimony (Filing No. 89; Filing No. 98); **GRANTS in part and DENIES in part** Defendant's Motions *in Limine* as set forth above (Filing No. 97); and **GRANTS in part and DENIES in part** Defendant's Motion to Exclude Expert Testimony as set forth above (Filing No. 96).

An order *in limine* is not a final, appealable order.  If a party believes that evidence excluded by this Order becomes relevant or otherwise admissible during the course of the trial, counsel may request a hearing outside the presence of the jury.  Likewise, if the parties believe that specific evidence is inadmissible during the course of the trial, counsel may raise specific objections to that evidence.

**SO ORDERED.**

Date:    7/5/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Arthur Loevy
LOEVY & LOEVY
arthur@loevy.com

David B. Owens
LOEVY & LOEVY
david@loevy.com

Jonathan I. Loevy
LOEVY & LOEVY
jon@loevy.com

Mark Loevy-Reyes
LOEVY & LOEVY
mark@loevy.com

Steven E. Art
LOEVY & LOEVY
steve@loevy.com

Alexander Robert Carlisle
OFFICE OF THE ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov

Gustavo Angel Jimenez
OFFICE OF THE INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov

Hannah Lynette Hulsey
OFFICE OF THE INDIANA ATTORNEY GENERAL
hannah.hulsey@atg.in.gov

James Michael Sedam
OFFICE OF THE INDIANA ATTORNEY GENERAL
james.sedam@atg.in.gov